## MILAM v. MIDLAND CONSTRUCTORS, Inc.

Industrial Commission.
October 28, 1952.

Paul G. Rogers of Burns, Middleton & Rogers, West Palm Beach, for claimant.

James C. Paine of Earnest, Lewis, Smith & Jones, West Palm Beach, for employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

On September 9, 1950 the claimant Wilbur Milam sustained a severe back injury in the course of his employment as a lineman for Midland Constructors, Inc. His average weekly earnings were $90. He was furnished with medical attention by his employer's insurance carrier and was paid compensation for temporary total disability from the time of the injury until June 5, 1951 when the carrier initiated compensation payments for permanent partial disability.

Milam claims compensation for permanent total disability due to his injury. The insurance carrier concedes that he is permanently partially disabled to the extent of 20 per cent, but controverts his claim for a greater degree of permanent disability.

Dr. V. H. Shoultz, who examined the claimant on May 7, 1952, expressed his opinion regarding his disability as follows—"It is my considered opinion that the claimant, Wilbur Milam, is totally

and permanently disabled to perform any kind or character of work which requires manual labor, and I consider him to be permanently and totally disabled." In the opinion of Dr. Frank C. Hodges, who last examined claimant on April 26, 1951, he is permanently partially disabled to the extent of 20 per cent —"as applied to his general bodily efficiency." Dr. Raymond S. Roy, who examined him on August 8, 1952, estimated his permanent partial disability at 25 per cent, but added that he would never be able to perform construction work and would be confined necessarily to some form of light work not involving excessive standing, sitting, or walking, nor considerable bending, stooping or twisting.

The claimant's schooling ended with the fifth grade. Forty-seven years of age, he has never performed any work other than physical labor, having been a lineman since he was 19 years old. He has not engaged in any gainful occupation since his injury. He testified that he cannot sit or stand for very long periods, and has to lie down at frequent intervals, rarely staying up more than 2 or 3 hours at one time.

In the case of Rosier v. Roofing & Sheet Metal Supply Co. Inc., 41 So. 2d 308, the Florida Supreme Court stated—

> The theory of the workmen's compensation law is that one recovers compensation when there is an impairment of earning capacity or when by accident or otherwise he brings himself within one or more of the categories of disability as defined.

The workmen's compensation Act contains the following provisions—

> "Disability" means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury. § 440.02(9), F.S. '51.

> Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts. § 440.15(1)(b), F.S. '51.

In reviewing the evidence it is plain that Dr. Shoultz's rating of permanent total disability took into consideration not only claimant's functional disability in a purely medical sense, but also the nature and limitations of his educational and occupational background and training. It is equally obvious that the ratings given by Dr. Roy and Dr. Hodges, whose rating of claimant "applied to his general bodily efficiency," were based solely on estimates of functional disability, without regard to his peculiar educational or occupational qualifications. The medical and other evidence sustains a conclusion that he has been ren-

dered permanently unfit for manual labor by his injury. It is further shown that he is not qualified for any type of work other than manual labor.

The Act provides what are commonly called "schedule" amounts for permanent partial disability due to the loss or loss of use of various members of the body, such as the hand, the foot, the eye, and the various fingers, stating in section 440.15 (3) (s), Florida Statutes 1951, that compensation for permanent partial loss or loss of use of a member—"may be for proportionate loss or loss of use of the member." Disability benefits payable for loss of a specified member are arbitrarily designated and fixed by the Act, and are based on organic functional disability only, without taking wage loss into consideration. Under the same principle compensation for partial loss of use of a member is ordinarily based on the proportion of functional loss of use, from the purely medical standpoint. A different rule obtains, however, where the permanent disability is occasioned by injuries to the head or to the trunk of the body, as in the present case. Here, both the medical and wage-loss aspect of disability must be weighed, in order to arrive at a determination of the claimant's disability or impairment of earning capacity. Larson, in his recently published Workmen's Compensation Law, section 57.00, summarizes the applicable principles as follows—

> Compensable disability is inability, as the result of a work-connected injury, to perform or obtain work suitable to the claimant's qualifications and training. The degree of disability depends on impairment of earning capacity, which in turn is presumptively determined by comparing pre-injury earnings with post-injury earning ability; the presumption may, however, be rebutted by showing that post-injury earnings do not accurately reflect claimant's true earning power. * * *

> Total disability may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him for regular employment in the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work if he could get it will not detract from his status of total disability.

In discussing the subject, the same text writer further observes, in section 57.51—

> Total disability in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The difficulty, of course, is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally-disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

"An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."

The particular case which elicited this statement furnishes an excellent illustration of the typical combination of facts encountered in this area: claimant, a streetcar flagman, as a result of being caught between two streetcars, suffered the loss of his left eye, 75 per cent loss of use of his left arm, 10 per cent loss of use of the right ankle and foot, and severe post-traumatic neurosis. He worked for short periods thereafter as a conductor, as an income-tax worker, as a house-to-house canvasser, and as a detective, all with great difficulty and discomfort. The supervisor of placements of the Minnesota state employment service was permitted to testify that gainful jobs with reasonable continuity were not available for a person so handicapped. The Supreme Court, applying the rule quoted above, held that such evidence was admissible, and that the sporadic employment and earnings shown were not inconsistent with this concept of total disability.

* * * The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.

The weight of the evidence shows that claimant attained his approximate maximum degree of healing one year after the time of his injury. He has made no earnings since the injury occurred. There is every indication that he is permanently and totally disabled for any type of work for which he is qualified and trained. With his severely limited physical capabilities, certainly it cannot be said that a "reasonably stable market" for his services exists. Under all the circumstances, the claimant is entitled to an award of compensation for permanent total disability.

Upon consideration, it is hereby ordered as follows: (1) Compensation payments made to the claimant for the period between June 5, 1951 and September 9, 1951, when he attained his maximum degree of improvement, shall be credited to temporary total disability, (2) the insurance carrier shall pay the claimant compensation at the rate of $22 weekly during the continuance of his permanent total disability beginning as of September 9, 1951, provided, however, that the total compensation payable on account of claimant's injury shall not exceed 350 weeks, (3) the insurance carrier shall furnish such further medical and other remedial treatment and care as the nature of the claimant's injury may require, (4) the carrier shall pay to Paul G. Rogers, Esq., the sum of $850 for his legal services on claimant's behalf, and (5) the costs of this proceeding in the amount of $38.50 are taxed against the insurance carrier.